## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

GELPI BOUDWIN                                                          PLAINTIFF

v.                              No. 4:07CV00299 JLH

HASTINGS BAY MARINA, INC., d/b/a
LITTLE ROCK YACHT CLUB, *in personam*,
and LOVIE DOVIE, *in rem* a/k/a LUCY DOVIE                              DEFENDANTS

## OPINION AND ORDER

Gelpi Boudwin commenced this action seeking compensatory damages against Hastings Bay

Marina, Inc., d/b/a Little Rock Yacht Club, for negligence as well as an *in rem* judgment against the

Lovie Dovie.   Boudwin invoked jurisdiction pursuant to either 28 U.S.C. § 1333 as Boudwin's

alleged injury took place over a navigable water of the United States or to 28 U.S.C. § 1332 as

Boudwin is a citizen of Missouri, Hastings Bay Marina, Inc., is an Arkansas corporation, and the

amount in controversy exceeds $75,000.   Before the Court is the Yacht Club's motion for summary

judgment.   For the following reasons, that motion is granted.

### I.

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c); *see also Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla

v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).   The party moving for summary

judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material

fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts

showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

## II.

According to Boudwin, his son-in-law, Tim Shelton, contacted the Yacht Club on Boudwin's behalf to inquire as to whether Yacht Club had any boats listed for sale.  The person who answered the phone told Shelton that a couple of boats were for sale and that Shelton could come to the marina to look at the boats.  The person who answered the phone also told Shelton to ask for Sean Gossage when he arrived to look at the boats.  Gossage is the Harbor Master at the Yacht Club.

The same day that Shelton called the Yacht Club, Shelton and Boudwin went to the marina to view the boats.  When they arrived, two men working on boats at the marina put them in touch with Gossage when they asked for him.  Gossage proceeded to show Shelton and Boudwin several boats, the last of which was the Lovie Dovie or the Lucy Dovie ("Dovie").  Boudwin also alleges in his brief that Gossage removed a hatch cover from the deck floor of the Dovie's pilothouse; that this hatch cover was located immediately behind the instrument panel and steering wheel in the vessel's pilothouse deck, where Boudwin was standing at the time; that Boudwin was not aware that Gossage had removed the hatch cover, nor did Gossage warn Boudwin of that removal; and that Boudwin then stepped back from the instrument panel and fell through the opening in the pilothouse deck and sustained serious and permanent physical injury.

According to the Yacht Club, Gossage's job responsibilities include renting slips, hauling vessels in and out of the waterway, supervision of the repair of vessels, and maintenance of the grounds.  It contends that Gossage has never been a salesman and does not sell vessels, nor was the Yacht Club in the business of selling vessels.  Neither the Yacht Club nor Gossage had a contract or other arrangement to sell the Dovie for its then owners, nor did the Yacht Club or Gossage receive a commission for the sale.  Rather, at the time of events giving rise to this litigation, Gossage lived in a vessel moored in the slip next to the Dovie and was showing the vessel as a friend and favor to its owners.  The Yacht Club further contends that Gossage was not working within the scope of his employment at the time of the accident and that neither the Yacht Club nor Gossage had any ownership, possession, or control over the vessel on which Boudwin was allegedly injured.

### III.

While the Court's jurisdiction over this controversy is not in dispute, the Court must nevertheless determine whether jurisdiction is proper, and if so, whether it is by virtue of maritime law or diversity of citizenship.  Among other reasons, the Court must determine the proper basis for jurisdiction in order to ascertain whether the dispute is governed by federal common law or Arkansas law.  *See Exxon Shipping Co. v. Baker*, __ U.S. __, __, __ S. Ct. __, __, __ L. Ed. 2d __, 2008 WL 2511219, at *8 (June 25, 2008) ("[M]aritime law remains federal common law . . . ."); *Prudential Ins. Co. of America v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) ("A district court sitting in diversity applies the law . . . of the state in which it sits.").

The Supreme Court has stated that

a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.  A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.  The connection test raises two issues.  A court, first,

must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995) (citations omitted).  The reason for the connection test is that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce . . . ."  *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654, 2658, 73 L. Ed. 2d 300 (1982).  Here, the alleged tort took place on the Arkansas River, a navigable waterway of the United States; thus, the location test is satisfied.  The next question is whether the tort has a potentially disruptive impact on maritime commerce.  The Court concludes that it does not.

It is apparent from the record that the Dovie is a pleasure boat rather than a commercial boat. The Supreme Court has stated that "pleasure boats themselves [have] little to do with the maritime commerce lying at the heart of the admiralty court's basic work . . . ."  *Jerome B. Grubart*, 513 U.S. at 533, 115 S. Ct. at 1048.  However, on at least two occasions, the Supreme Court has exercised federal maritime jurisdiction with controversies involving pleasure boats.  *See Foremost*, 457 U.S. 668, 102 S. Ct. 2654; *Sisson v. Ruby*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990).  In *Foremost*, two pleasure boats collided with each other on the Amite River in Louisiana.  457 U.S. at 669, 102 S. Ct. at 2655.  The Court reasoned that a collision, even between two boats that had never been involved in commercial activity, could potentially take place on a busy commercial waterway and thereby have a significant effect on maritime commerce by disrupting the navigability of that waterway.  *Id*. at 675, 102 S. Ct. at 2658.  Furthermore, it ruled that "*all* operators of vessels on navigable waters [must be] subject to uniform rules of conduct."  *Id*.  Therefore, "[t]he potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional

4

concern that admiralty law holds for navigation, compel[led] the conclusion that this collision between two pleasure boats on navigable waters [had] a significant relationship with maritime commerce." *Id.* (footnote omitted). In *Sisson*, a fire erupted in a pleasure yacht's washer/dryer unit, destroying that ship and damaging several neighboring vessels as well as the marina. 497 U.S. at 360, 110 S. Ct. at 2894. While no commercial vessels were injured in that particular fire, the Court reasoned that it is not the actual effects the tort has on maritime commerce that serve as the basis for the jurisdictional inquiry, but rather "the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* at 362-63, 110 S. Ct. at 2896. It was certainly possible or even likely, the Court reasoned, that if one vessel at a marina catches fire, other vessels docked at that marina may be damaged, and some of those vessels may very well be commercial. *Id.* Thus, fires at marinas bore a substantial connection to maritime commerce, and maritime jurisdiction was therefore properly invoked.

Here, the injury was isolated to a single pleasure boat docked at a yacht club. No other boats were involved, nor could they have been affected by a single passenger on a docked vessel falling through an open hatch. While the possible sale of the Dovie to Boudwin is a potential commercial transaction, such commerce is different in kind from the sort sought to be protected by maritime law, namely, the use of navigable waterways of the United States for commercial purposes. Thus, the facts of this case fail the connection test required to invoke maritime jurisdiction. This Court therefore has jurisdiction pursuant to the parties' diversity of citizenship, and the dispute is governed by Arkansas law.

## IV.

Boudwin has brought a claim of negligence against the Yacht Club. In Arkansas, "in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the

plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." *Fordyce Bank & Trust Co. v. Bean Timberland, Inc.*, 369 Ark. 90, 94, 251 S.W.3d 267, 270-71 (2007). At least for the purposes of this motion, it is not seriously disputed whether Gossage negligently caused injuries to Boudwin. The questions are first, whether Gossage owed a duty to Boudwin, and second, if Gossage breached that duty, whether the Yacht Club can be held liable for the damages proximately caused by that breach. The Court will address the questions in reverse order.

Generally speaking, plaintiffs ordinarily seek to hold an employer liable for an employee's tort through the doctrine of respondeat superior. *See, e.g., Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 540-41, 237 S.W.3d 87, 92-93 (2006); *Jackson v. Ivory*, 353 Ark. 847, 862-65, 120 S.W.3d 587, 596-98 (2003); *St. Joseph's Reg'l Health Ctr. v. Munos*, 326 Ark. 605, 612-14, 934 S.W.3d 192, 195-96 (1996). Under that theory, employers can only be held liable for the conduct of their employees if the employees are acting within the scope of their employment when the tort takes place. *Cooper Clinic*, 366 Ark. at 541, 237 S.W.3d at 92; *Jackson*, 353 Ark. at 863, S.W.3d at 596; *Munos*, 326 Ark. at 612, 934 S.W.3d at 195. Here, Boudwin does not contend that Gossage was acting within the scope of his employment when he showed Boudwin the Dovie for the purpose of selling it to him. Rather, he contends that the Yacht Club held Gossage out as having that authority, thereby making the Yacht Club liable as principal for the actions of its agent Gossage pursuant to the doctrine of apparent authority. Arkansas law defines apparent authority as follows:

> Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume, or that he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority that he has; or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

6

*Found. Telecomm., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 239, 16 S.W.3d 531, 536 (2000).  The

*Restatement (Third) of Agency* further defines "[a]pparent authority [as] the power held by an agent

or other actor to affect a principal's legal relations with third parties when a third party reasonably

believes the actor has authority to act on behalf of the principal and that belief is traceable to the

principal's manifestations."  RESTATEMENT (THIRD) OF AGENCY § 2.03 (2008).  It should also be

noted that "whether an agent is acting within the scope of actual or apparent authority is [ordinarily]

a question of fact."  *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, __, __ S.W.3d __, __,

2007 WL 4415205 (December 19, 2007).

Once again generally speaking, plaintiffs use the doctrine of apparent authority to bind a

principal to a contract that an agent allegedly agreed to on the principal's behalf.  *See*, *e.g.*, *Found.*

*Telecomm., Inc. v. Moe Studio, Inc.*, 341 Ark. at 239, 16 S.W.3d at 536; *Sterne, Agee & Leach*, 2007

WL 4415205; *Youree v. Eshaghoff*, 99 Ark. App. 4, __, __ S.W.3d __, __, 2007 WL 1346644

(May 9, 2007).  Nevertheless, the *Restatement (Third) of Agency* does specifically allow that

> A principal is subject to vicarious liability for a tort committed by an agent in dealing
> or communicating with a third party on or purportedly on behalf of the principal
> when actions taken by the agent with apparent authority constitute the tort or enable
> the agent to conceal its commission.

**Comment:**

\* \* \*

*b.  Connection between apparent authority and agent's tortious conduct*. . . .  A
principal is also subject to liability under the rule stated in this section when an
agent's tortious conduct leads to physical injury.

**Illustration:**

3.  O, who owns an office building, retains P, a construction firm, to renovate the
building.  T, a prospective tenant, visits the building.  T asks P's site manager, A,
whether it will be safe for T to inspect a particular group of offices.  A tells T to ask
G, a security guard in the building, saying "G's our point person for safety."  G tells
T that the offices in question are safe to visit although G does not know whether this

is so.  Unbeknownst to T, G is an employee of Guards, Inc., not P.  P and Guards, Inc., have instructed A and G never to direct prospective tenants within the building, but T neither knows nor has reason to know this.  T reasonably believes that G, to whom A directs T, has authority to answer questions from prospective tenants.  T is injured when T falls through the weakened flooring in one of the offices.  P is subject to liability to T.  G is also subject to liability.

RESTATEMENT (THIRD) OF AGENCY § 7.08.  However, Boudwin has not cited, nor has the Court found, a single Arkansas case that holds a principal liable for a tort committed by an agent that was acting outside the scope of his employment but was nonetheless cloaked with apparent authority when committing the tort.  The closest statement on point comes from a 1923 case that states, "the maxim respondeat superior . . . imputes liability to a master for the negligent acts of his servant, within the scope of the servant's actual or apparent authority, irrespective of any contract." *Mo. Pac. R.R. Co. v. Hanna*, 157 Ark. 32, 36, 247 S.W. 1044, 1046 (1923).

Thus, it appears that whether a principal can be held liable for a tort committed by an employee acting outside the scope of his employment but with apparent authority is an issue of first impression in Arkansas.  "When the forum state's highest court has not decided an issue, federal courts sitting in diversity must attempt to predict how the state's highest court would resolve the question." *Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 798 (8th Cir. 2004).  However, in this case, the Yacht Club is entitled to summary judgment regardless of how the Supreme Court of Arkansas would resolve the issue.  If the court were to answer the question in the negative, there would be no legal basis to hold the Yacht Club liable for Boudwin's injuries.  If the court were to answer the question in the affirmative, the facts here do not support the imposition of liability on the Yacht Club for Boudwin's injuries.

Both the Arkansas and the Restatement definitions of apparent authority have the following two elements in common: (1) a manifestation from the principal that the agent had the authority to

8

perform the act on behalf of the principal, and (2) a reasonable belief on the part of the third party that the agent had the authority to perform the act on behalf of the principal.  Boudwin's only evidence that the Yacht Club acted to clothe Gossage with apparent authority is that when Shelton called the Yacht Club and inquired about boats for sale, someone – presumably an employee of the Yacht Club – referred him to Gossage.  Even viewing the facts in the light most favorable to Boudwin and presuming the person on the phone to be an employee of the Yacht Club, the person merely referred Shelton to Gossage as a person who had knowledge about boats for sale at that marina; he did not indicate that Gossage was acting on behalf of the Yacht Club with respect to boat sales.  There is no evidence that Boudwin or Shelton even knew that Gossage was an employee of the Yacht Club.  Illustration 3 of the Restatement includes the following language from the principal to the third party about the agent, "G's our point person for safety."  There is no evidence that a representative of the Yacht Club said to Shelton that "Gossage is our point person for selling boats" or words to that effect; rather, the evidence is that someone who may have been a representative of the Yacht Club referred Shelton to Gossage as a person with information about boats for sale.

Additionally, as noted, both Arkansas law and the Restatement indicate that there is a second aspect to apparent authority, the reasonableness of the third party in determining whether the agent is acting within the scope of his powers.  *First Pentecostal Church of Jesus Christ v. Koppers Co.*, 280 Ark. 101, 104, 655 S.W.2d 403, 405 (1983) ("[A] person dealing with a known agent is not authorized under any circumstances to blindly trust the agent's statements as to the extent of his power; such person must not act negligently, but must use reasonable prudence to ascertain whether the agent is acting within the scope of his powers." (citing *Hill v. Delta Loan & Finance Co.*, 224 Ark. 785, 789, 277 S.W.2d 63, 65 (1965))); RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. d ("The

specific context in which a third party observes an agent is of course relevant to the reasonableness of the third party's belief.").  Shelton testified:

> Q.  So, you walk into the Lucy Dovie.  Tell me what happened next.

> A.  We go to the Lucy Dovie and it's locked.  We look around the boat.  I look up on the fly deck and all of that and then [Gossage] had gone to break into the boat.  And my father-in-law was like, "Whoa.  That's not such a good idea."  And I even said, "We don't live too far from here.  We can come back."  They said, "No.  It's okay.  You know, they won't have a problem with us doing this."  And he got us into the boat.

> Q.  So you took his word for it that it was okay to get on the boat?

> A.  Yeah.  Yeah.

> Q.  But you had some reservations about it?

> A.  Yes.

> Q.  You went ahead and went for it anyway?

> A.  We both had reservations.

> Q.  You went ahead and went on the boat?

> A.  Yes.

Thus, the evidence is that Gossage had to break into the Dovie; he did not have a key.  No reasonable person would have believed that the Yacht Club authorized Gossage to break into the boat; a reasonable person would expect that if Gossage were acting on behalf of the Yacht Club, the Yacht Club would have supplied him with a key or insisted that the owner do so.

There is no genuine issue of material fact, and Boudwin has failed to make an adequate showing on an element of the case on which he bears the burden of proof.  *See Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 200, 871 S.W.2d 389, 392 (1994) ("The burden of proving an agency relationship lies with the party asserting its existence.").  Because Boudwin cannot hold the Yacht

Club liable for his injuries, it is unnecessary to determine whether Gossage owed Boudwin a duty while they were on board the Dovie.

**CONCLUSION**

There was no manifestation from the Yacht Club as principal that Gossage was its agent for boat sales, nor was it reasonable for Boudwin to determine that Gossage was acting with the apparent authority of the Yacht Club during the time period in which Boudwin was injured.  Thus, the Yacht Club is not bound by Gossage's actions, and its motion for summary judgment is therefore granted.

IT IS SO ORDERED this 11th day of July, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE